**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **MORRIS CLEMONS,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:11-cv-03140** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**ORDER**

Before the Court are seven motions.  First, on December 30, 2011, Petitioner Morris Clemons filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (ECF No. 1 ("§ 2255 Mot.").)  The Government filed a response on July 20, 2012.  (Resp. in Opp'n to Mot. Filed Pursuant to 28 U.S.C. § 2255, ECF No. 7 ("§ 2255 Resp.").)

Second, on July 6, 2012, before filing its § 2255 Response, the Government filed a motion requesting an extension of its deadline to file a response.  (Mot. for Extension of Time to Resp. to Mot. to Vacate Pursuant to 28 U.S.C. § 2255, ECF No. 5 ("Mot. for Extension of Time").)  Clemons has not filed a response to the Motion for Extension of Time, and the deadline for doing so has passed.  L.R. 7.2(a)(2).

Third, on August 10, 2012, Clemons filed a motion requesting "an order granting [an] evidentiary hearing because the Government

[cannot] meet its burden of proof, to establish the Armed Career Criminal Act applies" to Clemons. (Pet'r's Mot. for Traverse 1, ECF No. 8 ("Traverse Mot.").) The Government has not filed a response to the Traverse Motion, and the deadline for doing so has passed. L.R. 7.2(a)(2).

Fourth, on August 20, 2012, Clemons filed a Motion to Supplement and Amend § 2255 Habeas with Recent Sixth Circuit Decision Announced in [Jones v. United States, 689 F.3d 621 (6th Cir. 2012)]. (ECF No. 9 ("First Mot. to Suppl.").) The Government has not filed a response to the First Motion to Supplement, and the deadline for doing so has passed. L.R. 7.2(a)(2).

Fifth, on July 23, 2013, Clemons filed a Motion to Supplement § 2255 Petition Based Upon Recent Decision(s) Announced by the Supreme Court of the United States. (ECF No. 10 ("Second Mot. to Suppl.").) The Government has not filed a response to the Second Motion to Supplement, and the deadline for doing so has passed. L.R. 7.2(a)(2).

Sixth, on May 27, 2014, Clemons filed a Supplemental Motion and Petition to Amend [§] 2255 Habeas Corpus Memorandum in Support of Petitioner's Motion to Vacate, Set Aside, or Correct the Conviction and Sentence. (ECF No. 11 ("Third Mot. to Suppl.").) The Gov-

ernment has not filed a response to the Third Motion to Supplement, and the deadline for doing so has passed.  L.R. 7.2(a)(2).

Seventh, on September 17, 2015, Clemons filed a Motion to Supplement § 2255 Petition for Resentencing in Light of Recent Supreme Court Decision [Johnson v. United States, 135 S. Ct. 2551 (2015)].  (ECF No. 12 ("Fourth Mot. to Suppl.").)  The Government filed a response to the Fourth Motion to Supplement on September 20, 2016.  (Supp. Resp. in Opp'n to Mot. Filed Pursuant to 28 U.S.C. § 2255, ECF No. 15 ("First Johnson Resp.").)[1]  Pursuant to the Court's order for additional briefing, the Government filed an additional response on October 5, 2016.  (Order, ECF No. 16 ("Order for Additional Briefing"); Second Suppl. Resp. in Opp'n to Mot. Filed Pursuant to 28 U.S.C. § 2255, ECF No. 18 ("Second Johnson Resp.").)  Clemons has not filed a reply in support of the Fourth Motion to Supplement, and the deadline for filing a reply has passed.  (Order for Additional Briefing 4 (setting reply deadline).)

For the reasons stated below, the Government's Motion for Extension of Time to File a Response is GRANTED.  The First, Second, Third, and Fourth Motions to Supplement are GRANTED as to their requests that this Court consider case law.  The Fourth Motion to

---

[1] The Government titled this document as if it were a supplemental response to the § 2255 Motion, but it addresses the Johnson-related arguments in the Fourth Motion to Supplement.

Supplement is DENIED as moot as to its request that the Court appoint counsel for Clemons to pursue his Johnson challenge. The Traverse Motion is DENIED. The § 2255 Motion is DENIED.

The Court GRANTS a certificate of appealability as to whether Clemons's 1987 convictions for attempted robbery are violent felonies under the ACCA. The Court DENIES a certificate of appealability as to all other issues raised in the § 2255 Motion.

I. **BACKGROUND**

A. **Case Number 08-20166**

On May 16, 2008, a federal grand jury returned a single-count indictment charging Clemons, a convicted felon, with possessing a semiautomatic pistol, on or about December 11, 2007, in violation of 18 U.S.C. § 922(g). (Indictment, ECF No. 1 in 08-20166.)[2] On April 8, 2009, after a trial, a jury found Clemons guilty. (Jury Verdict, ECF No. 49 in 08-20166 ("Jury Verdict").)

Before Clemons's sentencing hearing, the U.S. Probation Office prepared a Presentence Investigation Report. (Presentence Investigation Report in 08-20166 ("PSR").) The PSR calculated Clemons's guidelines-sentencing range pursuant to the 2008 edition of the U.S. Sentencing Commissions Guidelines Manual ("U.S.S.G."). (PSR ¶ 11.)

---

[2] References to "08-20166" are to filings in United States v. Clemons, No. 2:08-20166-SHM (W.D. Tenn.).

Clemons's base offense level was 20. (Id. ¶ 12 (citing U.S.S.G. § 2K2.1).) The PSR stated that Clemons was an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and subject to a sentencing enhancement. (Id. ¶ 18 (citing U.S.S.G. § 4B1.4).) The PSR stated that Clemons "has at least three prior convictions for [violent felonies]," but did not state the convictions on which it based that claim.[3] (Id.) Based on his armed-career-criminal status, Clemons's total offense level was 33. (Id. ¶ 20 (citing U.S.S.G. § 4B14(b)(3)(B)).)

After reviewing Clemons's criminal history, the PSR stated that his listed convictions resulted in 4 criminal-history points, leading to a criminal-history category of III. (Id. ¶ 30 (citing U.S.S.G. § 5A).) Because Clemons qualified as an armed career criminal, however, his criminal-history category was IV. (Id. ¶ 31 (citing U.S.S.G. § 4B1.4(c)(3)).)

Clemons's recommended guidelines-sentencing range, based on a total offense level of 33 and a criminal-history category of IV, was 188 to 235 months. (Id. ¶ 56; see U.S.S.G. ch. 5 pt. A.) His statutory minimum sentence was 180 months. (PSR ¶ 55 (citing 18 U.S.C. §§ 922(g), 924(e)).)

---

[3] The PSR used the term "crimes of violence" instead of "violent felonies" in the quoted passage. (PSR ¶ 18.) The two are distinct. From the context, it is clear that this was a drafting error and that the Probation Office meant "violent felonies."

At his sentencing on July 23, 2009, Clemons did not object to the PSR. (Position of Def. with Respect to Sentencing Factors and Sentencing Mem. 1, ECF No. 57 in 08-20166 ("Clemons PSR Resp.").) The Court found that Clemons was an armed career criminal. (Hr'g Tr. 28, ECF No. 63 in 08-20166 ("Sentencing Tr.").) The Court sentenced Clemons to 188 months in prison. (Id. at 38.)

On August 3, 2009, Clemons filed a Notice of Appeal. (ECF No. 61 in 08-20166.) On appeal, Clemons argued that the trial evidence was insufficient to support his conviction. (See, e.g., Br. of Appellant/Def. 10-20, United States v. Clemons, Case No. 09-5888 (6th Cir. Mar. 29, 2010) ("Clemons Appeal Brief").) On July 20, 2011, the Sixth Circuit affirmed the conviction. United States v. Clemons, 427 F. App'x 457, 461 (6th Cir. 2011).

**B.   Case Number 11-03140**

On December 30, 2011, Clemons filed the § 2255 Motion. (§ 2255 Mot.) The Motion states two grounds for relief. Ground One is ineffective assistance of counsel. (Id. at PageID 4; see also Mem. in Supp. of Pet'r's Mot. to Vacate, Set Aside or Correct the Conviction and Sentence Pursuant to 28 U.S.C. § 2255 at 5-9, ECF No. 1-1 ("Mem. ISO § 2255 Mot.").) Ground Two is that Clemons's "sentence being enhanced was [u]nconstitutional as applied." (§ 2255 Mot. at PageID 4.)

Between August 2012 and May 2014, Clemons filed three motions seeking to supplement the § 2255 Motion. (See generally First Mot. to Suppl.; Second Mot. to Suppl.; Third Mot. to Suppl.) Each cites case law to support the § 2255 Motion. The key cases cited are (1) Jones; (2) Descamps v. United States, 133 S. Ct. 2276 (2013); and (3) United States v. Barbour, 750 F.3d 535 (6th Cir. 2014).

On August 3, 2015, Clemons filed a motion titled, "In Light of Recent Supreme Court Decision [Johnson], Defendant Move This Honorable Court [to] Issue an Order for Appointment of Counsel to Assist in Filing the Necessary Motion to Correct the Illegal Sentence Imposed, Due to the Invalidation of the Residual Clause." (ECF No. 74 in 08-20166.)[4] That motion requested counsel for Clemons, to help him file a motion asserting that the Court should vacate his sentence based on Johnson. (Id. at 1.) On September 17, 2015, Clemons filed the Fourth Motion to Supplement. That motion requested that he be allowed "to supplement his § 2255 motion in light of [Johnson]." (Fourth Mot. to Suppl. 1.) It also repeated Clemons's request that "appointment of counsel be approved in order to further assist [Clemons] in his constitutional endeavors." (Id. at 1–2.)

---

[4] Clemons filed certain documents discussed here and in the next two paragraphs in his criminal case, but they pertain to the § 2255 Motion. The Court thus discusses them here.

7

On June 24, 2016, the Court entered an Order Appointing Counsel Pursuant to the Criminal Justice Act. (ECF No. 75 in 08-20166 ("Order Appointing Counsel").) That order appointed Corliss Shaw as counsel for Clemons "[f]or purposes of a Johnson review." (Id.)

On July 2, 2016, Shaw filed a Notice of Johnson Review. (ECF No. 76 in 08-20166 ("Not. of Johnson Review").) Shaw reported that she had completed her review and that her office "[would] not be filing anything on behalf of Mr. Clemons pursuant to Johnson[.]" (Id.) Shaw also reported that she had "communicated" her review to Clemons "on July 1, 2016 by letter sent via the U.S. Postal Service." (Id.)

On September 13, 2016, the Court entered an order directing the Government to respond to the Fourth Motion to Supplement. (Order Directing U.S. to Resp., ECF No. 14.) The Government filed its First Johnson Response on September 20, 2016. (First Johnson Resp.) On September 21, 2016, the Court entered an order requesting additional Government briefing. (Order for Additional Briefing.) The Government filed its Second Johnson Response on October 5, 2016. (Second Johnson Resp.)

## II. SUBSIDIARY MOTIONS

### A. Motion for Extension of Time

Rule 6(b)(1)(A) governs the Motion for Extension of Time.[5] Under Rule 6(b)(1)(A), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . with or without motion or notice if . . . a request is made, before the original time or its extension expires[.]" The Court originally ordered the Government to respond to the § 2255 Motion by July 8, 2012. (Order Directing U.S. to Respond, ECF No. 3.) Because July 8 was a Sunday, the Government's response deadline, under Rule 6(a)(1)(C), was July 9, 2012. The Motion for Extension of Time, filed on July 6, 2012, was timely.

The Motion for Extension of Time states that the Government attorney then responsible for this case filed his appearance after the Court directed the Government to respond to the § 2255 Motion. (Motion for Extension of Time ¶¶ 2–3.) The attorney did not receive ECF notification of the Court's order. (Id. ¶ 3.) Clemons did not respond to the Motion for Extension of Time, and will suffer no prejudice if the Court considers the § 2255 Response. For good cause shown, the Motion for Extension of Time is GRANTED. The Court will consider the § 2255 Response.

---

[5] References to "Rule ___" are to the Federal Rules of Civil Procedure.

**B.   Motions to Supplement and Request for Counsel in Fourth Motion to Supplement**

Each Motion to Supplement addresses cases decided after Clemons filed the § 2255 Motion.   The Government disagrees with Clemons about the import of these decisions, but does not object to the Motions to Supplement.   There is no reason not to consider the case law that Clemons presents.   Indeed, some cases that Clemons presents, such as Johnson, are binding Supreme Court precedent that this Court must consider.   The Court GRANTS the Motions to Supplement to the extent they request that the Court consider the cited case law.

The Fourth Motion to Supplement requests appointed counsel to help Clemons pursue a Johnson-related challenge to his sentence. After Clemons filed the Fourth Motion to Supplement, the Court entered the Order Appointing Counsel.   As discussed above, Corliss Shaw was the appointed counsel "[f]or purposes of a Johnson review," and she reported that she would not be filing anything on Clemons's behalf based on Johnson.   The Court DENIES as moot this portion of the Fourth Motion to Supplement.

**C.   Traverse Motion**

The Traverse Motion requests "an order granting [an] evidentiary hearing" to address the Court's finding that Clemons qualifies as an armed career criminal.   (Traverse Mot. 1.)   "If a habeas petitioner presents a factual dispute, then 'the habeas court

must hold an evidentiary hearing to determine the truth of the petitioner's claims.'"  Pola v. United States, 778 F.3d 525, 532 (6th Cir. 2015) (quoting Huff v. United States, 734 F.3d 600, 607 (6th Cir. 2013)).

The § 2255 Motion argues that Clemons received ineffective assistance of counsel and that he does not qualify as an armed career criminal.  As discussed below, both issues turn on questions of law that "the motion and the files and records of the case conclusively" resolve.  28 U.S.C. § 2255(b).  No evidentiary hearing is needed.  The Traverse Motion is DENIED.

## III. LEGAL STANDARDS

### A.   Section 2255 Motions

Clemons seeks relief under 28 U.S.C. § 2255.  (§ 2255 Mot.) Under § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

"To succeed on a § 2255 motion, a prisoner in custody must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that

was so fundamental as to render the entire proceeding invalid.'"
McPhearson v. United States, 675 F.3d 553, 558-59 (6th Cir. 2012)
(quoting Mallett v. United States, 334 F.3d 491, 496-97 (6th Cir.
2003)).

A prisoner must file his § 2255 motion within one year of the
latest of:

> (1) the date on which the judgment of con-
> viction becomes final;
>
> (2) the date on which the impediment to making
> a motion created by governmental action in
> violation of the Constitution or laws of
> the United States is removed, if the movant
> was prevented from making a motion by such
> governmental action;
>
> (3) the date on which the right asserted was
> initially recognized by the Supreme Court,
> if that right has been newly recognized by
> the Supreme Court and made retroactively
> applicable to cases on collateral review;
> or
>
> (4) the date on which the facts supporting the
> claim or claims presented could have been
> discovered through the exercise of due
> diligence.

28 U.S.C. § 2255(f).

A § 2255 motion "'is not a substitute for a direct appeal.'"
Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013) (quoting
Regalado v. United States, 334 F.3d 520, 528 (6th Cir. 2003)).
"[C]laims not raised on direct appeal," which are thus procedurally
defaulted, "may not be raised on collateral review unless the

petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003) (citing cases); see also, e.g., Jones v. Bell, 801 F.3d 556, 562 (6th Cir. 2015) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)).[6]

In the procedural-default context, the cause inquiry "'ordinarily turn[s] on whether . . . some objective factor external to the defense impeded counsel's efforts'" to raise the issue on direct appeal. Ambrose v. Booker, 684 F.3d 638, 645 (6th Cir. 2012) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration and ellipses in Ambrose); see also United States v. Frady, 456 U.S. 152, 167–68 (1982) (cause-inquiry standards in § 2254 cases apply to § 2255 cases). "[F]or cause to exist, an 'external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim.'" Bates v. United States, 473 F. App'x 446, 448–49 (6th Cir. 2012) (quoting McCleskey v. Zant, 499 U.S. 467, 497 (1991)) (emphasis removed).

---

[6] Alternatively, a petitioner may obtain review of a procedurally defaulted claim by demonstrating "actual innocence." Bousley v. United States, 523 U.S. 614, 623 (1998). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. (quoting Schlup v. Delo, 513 U.S. 298, 327–328 (1995) (internal quotation marks omitted)). Clemons nowhere suggests that he is actually innocent of violating 18 U.S.C. § 922(g). (See generally § 2255 Mot.) Clemons cannot obtain review of procedurally defaulted claims based on actual innocence.

For the prejudice inquiry to excuse default, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." Frady, 456 U.S. at 168; see also Ambrose, 684 F.3d at 649.

Ineffective assistance of counsel can constitute cause excusing procedural default. Where a petitioner claims that a procedural default occurred due to ineffective assistance of counsel, "relief under § 2255 [is] available subject to the standard of Strickland v. Washington, [466 U.S. 668 (1984)]." Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996); see also Bell, 801 F.3d at 562. Ineffective assistance of counsel, under the Strickland standard, can also serve as an independent ground for § 2255 relief. See, e.g., Campbell v. United States, 686 F.3d 353, 357 (6th Cir. 2012). Clemons's motion implicates both aspects of ineffective assistance.

To establish ineffective assistance of counsel, "[f]irst, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the con-viction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

To demonstrate deficient performance by counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In considering an ineffective-assistance claim, a court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. . . . The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687, 689).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. "In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Wong v. Belmontes, 558 U.S. 15, 27 (2009); Strickland, 466 U.S. at 693).

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  Strickland, 466 U.S. at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010) (citing Strickland, 466 U.S. at 689, 693).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under de novo review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence."  The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

Richter, 562 U.S. at 105 (citations omitted).  "Counsel [cannot] be unconstitutionally ineffective for failing to raise . . . meritless arguments."  Mapes v. Coyle, 171 F.3d 408, 427 (6th Cir. 1999).

After a petitioner files a § 2255 motion, the Court reviews it and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rules Governing Section 2255 Proceedings for the U.S. District Courts ("§ 2255 Rules") at Rule 4(b). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Id. The § 2255 movant is entitled to reply to the government's response. Id. at Rule 5(d). The Court may also direct the parties to provide additional information relating to the motion. Id. at Rule 7(a). If the district judge addressing the § 2255 motion is the same judge who oversaw the trial, the judge "'may rely on his or her recollection of the trial'" in denying the motion. Christopher v. United States, 605 F. App'x 533, 537 (6th Cir. 2015) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)).

**B.    ACCA's "Violent-Felony" Framework**

Clemons's § 2255 Motion challenges the Court's finding that he was an armed career criminal under the ACCA. Under the ACCA, a defendant convicted under 18 U.S.C. § 922(g) who has three previous convictions for violent felonies or serious drug offenses is subject to a mandatory minimum sentence of 180 months in prison. 18 U.S.C.

§ 924(e)(1).  Without the prior qualifying convictions, a defendant convicted under § 922(g) is subject to a statutory maximum sentence of 120 months.  Id. § 924(a)(2).

The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (a) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force clause"); (b) "is burglary, arson, or extortion, [or] involves use of explosives" (the "enumerated-offenses clause"); or (c) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause").  Id. § 924(e)(2)(B).

In Johnson v. United States, the Supreme Court held that a sentence imposed under the residual clause of the ACCA violates due process.  135 S. Ct. at 2563.  In Welch v. United States, the Supreme Court applied its holding in Johnson retroactively to ACCA cases on collateral review.  136 S. Ct. 1257, 1268 (2016); see also In re Watkins, 810 F.3d 375, 383–84 (6th Cir. 2015).

Johnson does not question sentencing enhancements under the ACCA's use-of-force clause or enumerated-offenses clause.  Johnson, 135 S. Ct. at 2563.  "The government . . . cannot enhance [a defendant's] sentence based on a prior conviction that constitutes a violent felony pursuant only to the residual clause."  United States

v. Priddy, 808 F.3d 676, 683 (6th Cir. 2015).  "But a defendant can still receive an ACCA-enhanced sentence based on the statute's use-of-force clause or enumerated-offense[s] clause[.]"  Id.

"When determining which crimes fall within . . . the 'violent felony' provision of [the ACCA], federal courts use the 'categorical approach.'"  United States v. Covington, 738 F.3d 759, 762 (6th Cir. 2013) (citations omitted).[7]  Using that approach, courts "look[] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions."  Taylor v. United States, 495 U.S. 575, 600 (1990).

"[T]here are two steps in applying the categorical approach to determine whether a prior conviction constitutes . . . a violent felony under the ACCA."  Covington, 738 F.3d at 763.  "First, a court must ask whether the statute at issue is divisible by determining if the statute lists 'alternative elements.'"  Id. (quoting Descamps, 133 S. Ct. at 2293).  "[A] divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction."  Descamps, 133 S. Ct. at 2283.

---

[7] Covington addresses the definition of "crime of violence" under U.S.S.G. § 4B1.2(a).  Guidelines decisions are applicable to ACCA cases because "[w]hether a conviction is a 'violent felony' under the ACCA is analyzed in the same way as whether a conviction is a 'crime of violence' under [U.S.S.G.] § 4B1.2(a)."  United States v. McMurray, 653 F.3d 367, 371 n.1 (6th Cir. 2011).

If a statute is divisible, meaning that it "comprises multiple, alternative versions of the crime," a court uses a "modified categorical approach" and may "examine a limited class of documents," such as the indictment and jury instructions, "to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." Id. at 2283-84.[8] "Where the defendant has pled guilty, these so-called Shepard documents may include the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which

---

[8] In United States v. Mitchell, the Sixth Circuit explained that "[a] divisible statute is necessary but not sufficient for application of the modified categorical approach." 743 F.3d 1054, 1063 (6th Cir. 2014). The court further explained, "We make explicit a step in the analysis that the Covington panel alluded to implicitly: if a statute is divisible -- in that it sets out one or more elements of the offense in the alternative -- at least one, but not all of those alternative elements must depart from: (1) the elements of the generic ACCA crime (if the conviction is based on an enumerated offense); or (2) the definitions provided in . . . the [use-of-force clause] . . . (if the conviction is based on a non-enumerated offense)." Id. at 1065.

The comments in Mitchell appear to be dicta. For purposes of this case, however, the Court need not determine whether this portion of Mitchell controls. As to Clemons's attempted-robbery convictions, the Shepard documents do not isolate Clemons's specific crime of conviction. (See Section IV.C.2 infra.) Even if the Court could use the modified categorical approach, the Court would have to analyze both possible alternative versions of attempted robbery. As to Clemons's aggravated-assault convictions, even if the comments in Mitchell control, the Court can use the modified categorical approach. (See note 21 infra.) Under the relevant statute, at least one form of aggravated assault is not a violent felony. The Court need not address Clemons's conviction for attempted second-degree murder. As discussed below, a review of Clemons's other convictions demonstrates that he has three prior convictions for violent felonies, even after Johnson.

the defendant assented.'" United States v. Denson, 728 F.3d 603, 608 (6th Cir. 2013) (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)).  "'[T]he question is whether the court documents establish that the defendant "necessarily admitted" the elements of a predicate offense through his plea.'" McMurray, 653 F.3d at 377 (quoting United States v. Medina-Almaguer, 559 F.3d 420, 423 (6th Cir. 2009)).

The Supreme Court has clarified that a court should use the modified categorical approach only when a statute "lists multiple elements disjunctively," not when it "enumerates various factual means of committing a single element." Mathis v. United States, 136 S. Ct. 2243, 2249, 2256 (2016).  A "court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means." Id. at 2256.  It can do so by examining state law to determine (a) whether "a state court decision definitively answers the question," or (b) whether "the statute on its face . . . resolve[s] the issue." Id.  Alternatively listed items are elements where they "carry different punishments" or where the statute "itself identif[ies]" them as "things [that] must be charged." Id. They are means where the "statutory list is drafted to offer illustrative examples" only. Id. (internal quotation marks omitted). "[I]f state law fails to provide clear answers," a court may take

"a 'peek at the [record] documents'" of the prior conviction "for 'the sole and limited purpose of determining whether [the listed items are] element[s] of the offense.'" Id. at 2256–57 (quoting Rendon v. Holder, 782 F.3d 466, 473–74 (9th Cir. 2015)) (alterations in Mathis). If the listed items are "means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." Id. at 2256.

After having determined which of a statute's alternative elements formed the basis of the defendant's prior conviction, or after having determined that the statute is indivisible, the second step in the categorical approach requires the court to "ask whether the offense the statute describes, as a category, is a [violent felony]." Covington, 738 F.3d at 763.

"When determining whether a particular offense qualifies as a 'violent felony' under the use-of-force clause, [a court is] limited to determining whether that offense 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" Priddy, 808 F.3d at 685 (quoting 18 U.S.C. § 924(e)(2)(B)(i)). "The force involved must be 'violent force –– that is, force capable of causing physical pain or injury to another person.'" Id. at 685–86 (quoting Johnson v. United States, 559 U.S. 133, 140 (2010) ("Johnson 2010")).

When determining whether a particular offense qualifies as a violent felony under the enumerated-offenses clause, the "question is whether the elements of the prior conviction are equivalent to the elements of the generic definition of one of the offenses enumerated in . . . [§] 924(e)(2)(B)(ii)." Covington, 738 F.3d at 764. "The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." Descamps, 133 S. Ct. at 2281.

"If the offense 'sweeps more broadly' and 'criminalizes a broader swath of conduct' than [would] meet these tests, then the offense, as a category, is not a [violent felony]." Covington, 738 F.3d at 764 (quoting Descamps, 133 S. Ct. at 2281, 2283, 2289-91).

## IV. ANALYSIS OF § 2255 MOTION

### A. Timeliness of § 2255 Motion

Clemons was convicted on April 8, 2009. (Jury Verdict.) The Sixth Circuit affirmed the conviction on July 20, 2011. Clemons, 427 F. App'x at 461. Clemons did not seek a writ of certiorari in the U.S. Supreme Court. For § 2255(f)(1) purposes, "[w]here a defendant pursues direct review but does not seek a writ of certiorari, the conviction becomes final at expiration of the time for seeking such a writ." Story v. United States, Nos. 2:13-CR-55-JRG-MCLC-1, 2:16-CV-282-JRG, 2016 WL 7077616, at *2 (E.D.

Tenn. Dec. 2, 2016) (citing Clay v. United States, 537 U.S. 522, 525 (2003); U.S. Sup. Ct. R. 13(3)).

The deadline for seeking a writ of certiorari from the U.S. Supreme Court is 90 days "from the date of entry of the judgment or order sought to be reviewed." U.S. Sup. Ct. R. 13(3). That deadline was October 18, 2011. Clemons's conviction became final that day. Clemons filed the § 2255 Motion on December 30, 2011, less than a year after his conviction became final. The § 2255 Motion is timely.[9]

---

[9] Proposed amendments and supplements to a § 2255 motion must also be filed within §2255(f)'s one-year statute of limitations. See, e.g., Berry v. United States, No. 214-CV-02070-STA-CGC, 2017 WL 401269, at *10 (W.D. Tenn. Jan. 30, 2017). The First Motion to Supplement, filed on August 20, 2012, is timely.

The Second, Third, and Fourth Motions to Supplement were filed after October 18, 2012. They are not timely. Courts may deem claims raised in untimely supplemental pleadings to have been filed on the date of the original § 2255 motion if the supplemental claims "relate back" to the original § 2255 motion. Id. at *10 & n.50 (citing Fed. R. Civ. P. 15(c); Mayle v. Felix, 545 U.S. 644, 655 (2005)). Under Rule 15(c), a supplement outside the one-year statute of limitations can relate back if the supplement "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out –– or attempted to be set out –– in the original pleading."

The Second, Third, and Fourth Motions to Supplement raise arguments about the unconstitutionality of Clemons's sentence. The unconstitutionality of Clemons's sentence is Ground Two of the original, timely § 2255 Motion. (§ 2255 Mot. at PageID 4.) The Motions to Supplement assert claims arising from the same conduct, transaction, or occurrence set out in the original § 2255 Motion. The supplemental claims in the Second, Third, and Fourth Motions to Supplement relate back to the § 2255 Motion.

**B.  Ineffective Assistance of Counsel**

Ground One of the § 2255 Motion alleges ineffective assistance of counsel.  (§ 2255 Mot. at PageID 4.)  The Motion and accompanying memorandum make the following ineffective-assistance arguments:

1)  At sentencing, Clemons's counsel failed to ensure that the Court properly applied the modified categorical approach.  (§ 2255 Mot. at PageID 4; Mem. ISO § 2255 Mot. 6, 8.)

2)  At sentencing, Clemons's counsel failed to raise the argument that several of Clemons's prior convictions were not violent felonies because they were based on conduct that was reckless rather than intentional.  (Mem. ISO § 2255 Mot. 6–7.)

3)  On appeal, a "conflict of interest" existed because Clemons's attorney at trial and sentencing was the same attorney who represented Clemons on appeal.  (Id. at 5–6, 8.)

4)  On appeal, Clemons's counsel failed to "raise his constitutional claims regarding his prior convic-

---

The Fourth Motion to Supplement is timely under § 2255(f)(3).  The Fourth Motion asserts a challenge under Johnson.  Under § 2255(f)(3), a prisoner must file a § 2255 motion within a year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  Johnson was decided on June 26, 2015, and Clemons filed the Fourth Motion to Supplement on September 17, 2015.  The Fourth Motion to Supplement is timely.  See, e.g., Parker v. United States, Nos. 3-13-CR-56-TAV-HBG-1, 3-16-CV-139-TAV, 2016 WL 6683478, at *2 (E.D. Tenn. Nov. 14, 2016) (permitting Johnson-challenge amendment to § 2255 motion because amendment was filed within one year of Johnson).

tions being used for enhancing his sentence under § 924(e)." (§ 2255 Mot. at PageID 4.)[10]

In its responses, the Government argues that the Court correctly decided that Clemons qualifies as an armed career criminal. (§ 2255 Resp. 3–5.) The Government argues that Clemons cannot show any prejudice from any alleged ineffective assistance. (<u>Id.</u>)

### 1. Argument (1)

Clemons's first ineffective-assistance argument is that his sentencing counsel failed to demand that the Court apply the modified categorical approach to Clemons's prior convictions. (<u>See, e.g.</u>, Mem. ISO § 2255 Mot. 6, 8.) The Court construes that argument to be that Clemons's sentencing counsel should have objected to the PSR's conclusion that Clemons was an armed career criminal, on the ground that applying the modified categorical approach to Clemons's prior convictions would have shown that Clemons was not an armed career criminal.

To establish ineffective assistance under Argument (1), Clemons must show deficient performance, that his counsel's failure to object to the PSR was objectively unreasonable, and prejudice, that there is a reasonable probability that counsel's failure made Clemons's

---

[10] The list numbering here is the Court's (not Clemons's), based on the Court's review of the § 2255 Motion and the accompanying memorandum.

sentence worse.  Strickland, 466 U.S. at 687, 694.  Clemons cannot show prejudice.

The Court addresses below whether Clemons's prior convictions qualify as violent felonies.  (See Section IV.C.2 infra.)  Under current law, including use of the modified categorical approach where appropriate, Clemons has at least three violent felonies.  (Id.) The modified categorical approach does not affect the Court's conclusion about Clemons's attempted-robbery convictions.  The relevant Shepard documents do not help to specify the elements of Clemons's crime of conviction.  (Id.)  The modified categorical approach does affect the Court's analysis of Clemons's aggravated-assault convictions.  (Id.)  For those convictions, however, the modified categorical approach does not help Clemons.  Indeed, that approach demonstrates that Clemons's convictions for aggravated assault are violent felonies.  (Id.)  Because Clemons's three convictions for attempted robbery and aggravated assault are violent felonies, the Court need not consider Clemons's conviction for attempted second-degree-murder.

Clemons has at least three violent felonies, even following Johnson.  When Clemons was sentenced, the residual clause had not been deemed vague.  Crimes of conviction that were violent felonies only under the residual clause are not violent felonies now, but they

were when Clemons was sentenced.  Given that change in the law, and because the modified categorical approach does not help Clemons even after Johnson, there is no reasonable probability that Clemons's sentence would have been shorter if his counsel had insisted that the Court apply the modified categorical approach.  Given that lack of prejudice, Clemons's ineffective-assistance argument fails.

### 2.  Argument (2)

Clemons's second ineffective-assistance argument is that his sentencing counsel should have argued that some of Clemons's prior convictions were not violent felonies because they were based on reckless conduct.  (See, e.g., Mem. ISO § 2255 Mot. 6-7.)  The Government responds, inter alia, that even convictions for reckless conduct can qualify as violent felonies under the use-of-force clause.  (First Johnson Resp. 4-5 (discussing Voisine v. United States, 136 S. Ct. 2272 (2016)).)

To establish ineffective assistance under Argument (2), Clemons must show that his counsel's failure to present the recklessness argument was objectively unreasonable (deficient performance), and that there is a reasonable probability that failing to make that argument made Clemons's sentence worse (prejudice).  Strickland, 466 U.S. at 687, 694.

For at least two reasons, Clemons was not prejudiced by his counsel's failure to make the recklessness argument. First, the argument misunderstands the law. When a court determines whether a crime of conviction is a violent felony, it does not consider the defendant's actual conduct (e.g., whether conduct was reckless or intentional). Courts focus on the elements of the crime of conviction. See, e.g., Johnson, 135 S. Ct. at 2557; Taylor, 495 U.S. at 599–602. That rule was in place when Clemons was sentenced. An argument that some of Clemons's crimes of conviction were not violent felonies because Clemons's actual conduct was merely reckless would not have prevailed.

Second, to the extent Clemons argues that a crime of conviction cannot be a violent felony if the elements of the crime permit a defendant to commit it recklessly, his argument fails. In its discussion below, the Court analyzes the elements of Clemons's convictions for attempted robbery and aggravated assault. (See Section IV.C.2 infra.) Each offense required intentional conduct. (Id.) One could not commit the relevant crime recklessly. Even if Clemons's sentencing counsel had made the recklessness argument, counsel would not have helped Clemons. Failure to raise that argument did not prejudice Clemons. Argument (2) fails.

### 3.  Argument (3)

Clemons's third ineffective-assistance argument is that he received ineffective assistance because his trial attorney had a conflict of interest when serving as Clemons's appellate attorney. The Government makes no substantive response to that argument.  (See generally § 2255 Resp.)  The argument nevertheless fails.

A criminal defendant has a Sixth Amendment right to expect that his attorney will represent him without conflict.  See Gillard v. Mitchell, 445 F.3d 883, 890 (6th Cir. 2006) (citing Smith v. Anderson, 689 F.2d 59, 62–63 (6th Cir. 1982)).  To establish a violation of that right, a defendant must show that counsel had an actual conflict of interest.  Id. (citing cases).  For Sixth Amendment purposes, an "actual conflict" is one that adversely affected counsel's per-formance.  Id. (quoting Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002)).  "[I]f the conflict is as to a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation."  Moss v. United States, 323 F.3d 445, 463–64 (6th Cir. 2003) (citing cases).

To the extent Clemons grounds his argument on his trial counsel's serving as his appellate counsel, there is no ineffective assistance.  See, e.g., Whiting v. Burt, 395 F.3d 602, 619 (6th Cir. 2005) (opining that the "rather common occurrence of trial counsel

30

also acting as counsel on direct appeal" does not "in itself . . . create any obvious prejudice"). Clemons makes no specific argument about how any conflict affected him. Generalized and conclusory arguments are insufficient. This general-conflict argument, standing alone, fails.

### 4. Argument (4)

Clemons contends that his appellate attorney failed to follow Clemons's instructions and argue on appeal certain "constitutional claims regarding his prior convictions being used for enhancing his sentence under § 924(e)." (§ 2255 Mot. at PageID 4.) The Government does not make a substantive response to this argument. (See generally § 2255 Resp.)

It is not clear what specific arguments Clemons thinks his appellate attorney should have made. (See generally § 2255 Mot.; Mot. ISO § 2255 Mot.) To the extent Clemons thinks his appellate attorney should have made the arguments Clemons claims should have been made at sentencing, Argument (4) fails for the reasons stated above. To the extent Clemons contends that his appellate attorney failed to present some other unspecified arguments on appeal, Clemons's ineffective-assistance argument also fails. "[C]onclusory assertions of ineffective assistance are not adequate." United States v. Cosgrove, 637 F.3d 646, 663 (6th Cir. 2011)

(citing <u>United States v. Winkle</u>, 477 F.3d 407, 421 (6th Cir. 2007));

<u>cf.</u> <u>Strickland</u>, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.").

All of Clemons's ineffective-assistance arguments fail. The § 2255 Motion is DENIED as to Ground One.

### C.  Sentencing Enhancement

Ground Two of the § 2255 Motion is that the Court's enhancement of Clemons's sentence was "[u]nconstitutional as applied." (<u>Id.</u>) Clemons's sentence-enhancement arguments overlap somewhat with his ineffective-assistance arguments. The Court construes Clemons's sentencing-enhancement arguments, including those in the Motions to Supplement, as follows:[11]

> 1) At sentencing, the Court erred by failing to use the modified categorical approach to determine whether Clemons was an armed career criminal. (<u>See, e.g.</u>, § 2255 Mot. at PageID 4; Mem. ISO § 2255 Mot. 5–6, 8.)
>
> 2) At sentencing, the Court erred by relying only on statements made in the PSR to determine that Clemons was an armed career criminal. (Mem. ISO § 2255 Mot. 3.)

---

[11] The list numbering here is the Court's (not Clemons's), based on the Court's review of the § 2255 Motion, the accompanying memorandum, and the Motions to Supplement.

3) At sentencing, the Court erred by failing to require the Government to provide "sufficient documentation" -- namely, <u>Shepard</u> documents -- before determining that Clemons was an armed career criminal. (<u>Id.</u> at 3, 4.)

4) At sentencing, the Court erred by determining that Clemons was an armed career criminal based on convictions in which Clemons's conduct was reckless, not intentional. (<u>Id.</u> at 6-7.)

5) Under the Supreme Court's decision in <u>Johnson</u>, Clemons's sentence enhancement was unconstitutional. (Fourth Mot. to Suppl.)

## 1. **Arguments (1)–(4)**

Arguments (1) through (4) share a common theme: each contends that at sentencing, the Court failed to analyze, or failed to properly analyze, whether Clemons's prior convictions qualified as violent felonies. The Government argues that Clemons "waived any right to challenge his [ACCA] designation by (1) filing a position on presentence report indicating that he had no objections to the PSR; (2) reinforcing this position, on the record, during the sentencing hearing; and (3) failing to raise this issue in a timely fashion during his direct appeal." (§ 2255 Resp. 4 (footnotes omitted).) The Court understands the Government's position to be that Clemons's various sentence-enhancement arguments have been procedurally defaulted.

The Government is correct that Clemons raised none of these arguments at sentencing or on direct appeal. (<u>See generally</u> Clemons

PSR Resp.; Sentencing Tr.; <u>Clemons</u> Appeal Brief.)   The arguments are procedurally defaulted unless Clemons shows cause and prejudice excusing the default.   <u>Massaro</u>, 538 U.S. at 504; <u>Bell</u>, 801 F.3d at 562–63.

Clemons does not show sufficient cause and prejudice to excuse his procedural default of Arguments (1) through (4).   For two of those arguments, Arguments (2) and (3), Clemons shows no cause or prejudice at all.   Those arguments are procedurally defaulted.

Arguments (1) and (4) correspond to arguments about which Clemons claims that he received ineffective assistance of counsel. (<u>See generally</u> Sections IV.B.1 and IV.B.2 <u>infra</u>.)   Ineffective assistance can excuse procedural default.   <u>Grant</u>, 72 F.3d at 506. It does so, however, only where the alleged ineffective assistance meets the <u>Strickland</u> standard.   <u>Id.</u>   As discussed above, all of Clemons's ineffective-assistance arguments fail, including those that parallel Arguments (1) and (4).   Clemons has procedurally defaulted Arguments (1) and (4).

The § 2255 Motion is DENIED as to Arguments (1) through (4).

### 2.   Argument (5)

Clemons's final sentence-enhancement argument is that he no longer qualifies as an armed career criminal following <u>Johnson</u>.   At the time of his sentencing, the prior convictions qualifying Clemons

as an armed career criminal were: (a) a 1987 conviction for attempted robbery (PSR ¶ 22); (b) a second 1987 conviction for attempted robbery (id. ¶ 24); (c) a 1988 conviction for two counts of aggravated assault (id. ¶ 26); and (d) a 1993 conviction for attempted second-degree murder (id. ¶ 28).[12]

### a. Attempted robbery

Clemons was convicted of attempted robbery twice in 1987. (PSR ¶¶ 22, 24.) The question is whether those convictions are violent felonies after Johnson.[13]

---

[12] Clemons also had two prior convictions for escape. (First Johnson Response 4; PSR ¶¶ 26–27.) The Government does not contend that these convictions are violent felonies. (See generally First Johnson Response; Second Johnson Response.)

[13] In three alternative situations, the attempted-robbery convictions would straightforwardly justify an enhanced sentence. Clemons's situation differs from those situations, but they are useful for the analysis.

First, if Clemons's 1987 convictions had been for robbery, they would be violent felonies. When Clemons was convicted, Tennessee codified robbery at Tenn. Code Ann. § 39-2-501(a). In Mitchell, the Sixth Circuit determined that robbery under § 39-2-501(a) is categorically a violent felony under the use-of-force clause. 743 F.3d at 1059–60 (discussing Tenn. Code Ann. § 39-2-501(a) (1982) (repealed)).

Second, if a court asked whether Clemons's attempted-robbery convictions were "crimes of violence" under U.S.S.G. § 4B1.2, it would find they were. In United States v. Stephens, the Sixth Circuit determined that, under the U.S.S.G. commentary to § 4B1.2, attempts to commit crimes of violence are themselves crimes of violence. 651 F. App'x 445, 448 (6th Cir. 2016) (discussing U.S.S.G. § 4B1.2 cmt. n.1). As noted above, cases holding that a crime is a violent felony support the conclusion that the crime is a crime of violence. See, e.g., McMurray, 653 F.3d 367, 371 n.1. Mitchell's holding that § 39-2-501(a) robbery is a violent felony

The Supreme Court discussed how to analyze whether an attempt offense is a violent felony in <u>James v. United States</u>, 550 U.S. 192 (2007), <u>overruled in part by</u> <u>Johnson</u>, 135 S. Ct. 2551.[14]   <u>James</u> addressed whether a Florida conviction for attempted burglary was a violent felony.   <u>Id.</u> at 195.   The Court recited the relevant Florida statutes:

> "Burglary" means entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.   Florida's criminal attempt statute provided: "A person who attempts to commit an offense prohibited by law and in such attempt

---

thus means that § 39-2-501(a) robbery is a crime of violence.   Under <u>Stephens</u>'s attempt rule, attempted § 39-2-501(a) robbery is also a crime of violence.

Third, before <u>Johnson</u>, Clemons's attempted-robbery convictions were violent felonies.   In <u>United States v. Zabawa</u>, the Sixth Circuit held that "[w]here the crime itself is a 'violent felony' under the ACCA, an attempt to commit that crime will also qualify as a 'violent felony' **under the [residual clause]** if the state's attempt statute requires a 'substantial step' toward completion of the offense." 134 F. App'x 60, 66 (6th Cir. 2005) (citing cases) (emphasis added). As discussed below, in 1987, Tennessee's attempt statute required a substantial step toward completion of the crime -- indeed, it went further.   Because § 39-2-501(a) robbery is categorically a violent felony under <u>Mitchell</u>, attempted § 39-2-501(a) robbery would have been a violent felony under the residual clause before <u>Johnson</u>.

[14] <u>Johnson</u> overruled <u>James</u> because <u>James</u> held that a crime was a violent felony under the residual clause.   <u>Johnson</u>, 135 S. Ct. at 2563 ("[I]mposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process.   Our contrary holding[] in <u>James</u> . . . [is] overruled.").   <u>Johnson</u> did not overrule <u>James</u>'s discussion of how to analyze attempt convictions.

> does any act toward the commission of such
> offense, but fails in the perpetration or is
> intercepted or prevented in the execution
> thereof, commits the offense of criminal at-
> tempt."

Id. at 197 (quoting Fla. Stat. § 810.02(1) (1993); id. § 777.04(1)).

Analyzing the Florida statutes, James stated the elements of

attempted burglary:

> [W]e . . . ask whether attempted bur-
> glary, as defined by Florida law, is an offense
> that "involves conduct that presents a serious
> potential risk of physical injury to anoth-
> er."[15]  In answering this question, we employ
> the "'categorical approach'" that this Court
> has taken with respect to other offenses under
> ACCA.  Under this approach, we "'look only to
> the fact of conviction and the statutory
> definition of the prior offense,'" and do not
> generally consider the "particular facts
> disclosed by the record of conviction."  That
> is, we consider whether the **elements of the**
> **offense** are of the type that would justify its
> inclusion within the residual provision,
> without inquiring into the specific conduct of
> this particular offender.
>
> We begin by examining what constitutes
> attempted burglary under Florida law.  On its
> face, Florida's attempt statute requires only
> that a defendant take "any act toward the
> commission" of burglary. . . .

---

[15] As noted above, James addressed whether attempted robbery is a
violent felony under the residual clause, not the use-of-force clause
or enumerated-offenses clause.  To determine an offense's elements,
the distinction is not dispositive.  One determines offense elements
in the same way whether one analyzes the offense under the
use-of-force clause, enumerated-offenses clause, or (before
Johnson) the residual clause.  See, e.g., United States v. Prater,
766 F.3d 501, 513 (6th Cir. 2014).

> [W]hile the statutory language is broad,
> the Florida Supreme Court has considerably
> narrowed its application in the context of
> attempted burglary, requiring an "overt act
> directed toward entering or remaining in a
> structure or conveyance." Mere preparation is
> not enough. Florida's lower courts appear to
> have consistently applied this heightened
> standard.
>
> The pivotal question, then, is whether
> overt conduct directed toward unlawfully en-
> tering or remaining in a dwelling, with the
> intent to commit a felony therein, is "conduct
> that presents a serious potential risk of
> physical injury to another."

Id. at 201-03 (emphasis in original) (internal citations omitted).

Three points from James are instructive in analyzing an attempt offense. First, James considered the elements of attempted burglary, not burglary itself. When considering whether an attempt offense is a violent felony, the relevant elements are those of the attempt offense, not of the underlying offense.

Second, James examined not only the language of the Florida attempt statute, but also how Florida courts had interpreted the statute. When analyzing the elements of an attempt statute, a court should consider not only the statute itself, but how state courts have interpreted the statute. James specifically considered how Florida courts applied the attempt statute to the precise substantive offense at issue -- i.e., James determined the elements of attempted burglary by examining Florida cases applying the attempt statute to

38

burglary.  The Sixth Circuit has said that state cases applying attempt to other crimes can also bear on the elements of an attempt offense.  See, e.g., United States v. Taylor, 696 F.3d 628, 630–31 (6th Cir. 2012) (using attempt analysis in Michigan case on attempted felonious assault to determine elements of attempted larceny under Michigan law); United States v. Lane, 909 F.2d 895, 903 (6th Cir. 1990) (using attempt analysis in Ohio case on attempted theft to determine elements of attempted burglary under Ohio law).

Third, in James, the Court derived the elements of attempted burglary by starting with the language of the attempt statute and restating that language to incorporate both state-court inter-pretations of attempt and the elements of the relevant substantive offense.  Through this process, the Court determined that the elements of attempted burglary were that the defendant must engage in "overt conduct directed toward unlawfully entering or remaining in a dwelling, with the intent to commit a felony therein."  This analysis counsels a similar exercise for courts determining the elements of an attempt offense.[16]

_____

[16] The Court has not found any Sixth Circuit cases analyzing attempt offenses in the present context.  Numerous district courts facing similar situations appear to follow the James approach.  See, e.g., Creekmore v. United States, No. 1:14-CV-8018-SLB, 2017 WL 386660, at *11–12 (N.D. Ala. Jan. 27, 2017); Oliver v. United States, No. 16-CV-22665-PCH, 2017 WL 384245, at *3–5 (S.D. Fla. Jan. 4, 2017);

To determine the elements of Tennessee attempted robbery in 1987, the Court starts with the relevant attempt statute. In 1987, that was Tenn. Code Ann. § 39-1-501. Section 39-1-501 set the punishment for "any person [who] attempts to commit any felony or crime punishable by imprisonment . . . ." Tenn. Code. Ann. § 39-1-501 (1982) (repealed 1989). It did not further define "attempt." See generally id.

Applying section 39-1-501, Tennessee courts determined that the elements of a violation were (1) "intent to commit a specific crime," (2) "an overt act," and (3) "failure to consummate the crime." State v. Hundley, No. C.C.A. 87-48-III, 1988 WL 28552, at *1 (Tenn. Crim. App. Mar. 29, 1988) (citing State v. Staggs, 554 S.W.2d 620, 623 (Tenn. 1977)); see also State v. Cody, No. C.C.A.765, 1987 WL 15527, at *2 (Tenn. Crim. App. Aug. 7, 1987) (listing same elements and citing Tennessee pattern-jury instructions), modified on reh'g on other grounds, No. C.C.A. 765, 1987 WL 19277 (Tenn. Crim. App. Sept. 3, 1987).

The Court has found no Tennessee decisions applying section 39-1-501 to Tennessee's applicable robbery statute. Several Tennessee decisions applied section 39-1-501 (or its identical predecessor) to other offenses. Those decisions applied section

_____

Phillips v. United States, No. 16-81080-CIV, 2016 U.S. Dist. LEXIS 125317, at *12–30 (S.D. Fla. Sep. 13, 2016).

39-1-501 narrowly.  In early 1987, the Tennessee Court of Criminal Appeals opined that "[t]he overt act necessary to constitute an attempt to commit a felony must go beyond preparation for or planning the commission of the offense.  An attempt requires a direct movement toward commission of the offense." State v. Stevens, No. C.C.A. 736, 1987 WL 5498, at *1 (Tenn. Crim. App. Jan. 20, 1987).  The same court opined in 1996 that, before Tennessee amended its attempt statute in 1989, the overt-act requirement had "become so stringent that it was difficult to commit a legally sustainable attempt without committing the crime itself." State v. Devaney, Case No. 03C01-9407-CR-00246, 1996 WL 507484, at *2 (Tenn. Crim. App. Sept. 9, 1996) (discussing Dupuy v. State, 325 S.W.2d 238 (Tenn. 1959)); see also State v. Reeves, 916 S.W.2d 909, 911 (Tenn. 1996) ("By attempting to draw a sharp distinction between 'mere preparation' to commit a criminal act, which did not constitute the required overt act, and a 'direct movement toward the commission after the preparations had been made,' which did, Tennessee courts [before 1989] construed the term 'overt act' very narrowly.") (internal citation to Dupuy omitted).

Based on these authorities, the elements of a section 39-1-501 violation were (1) the intent to commit a specific crime, (2) a direct

movement -- beyond preparation or planning -- toward committing the crime, and (3) failure to consummate the crime.

The substantive offense underlying Clemons's 1987 attempt convictions was robbery under Tenn. Code Ann. § 39-2-501(a). Section 39-2-501(a) defined robbery as "the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear." Tenn. Code Ann. § 39-2-501(a) (1982) (repealed 1989).

Section 39-2-501(a) states that one can accomplish robbery either "by violence" ("robbery-by-violence") or by "putting [a] person in fear" ("robbery-by-fear"). This presents an analytical issue. Section 39-1-501, the attempt statute, has no alternative phrasing. It is indivisible. The Sixth Circuit has determined, however, that Section 39-2-501(a), the robbery statute, is divisible. Mitchell, 743 F.3d at 1065-66 (finding Section 39-2-501(a) divisible because of fear and violence alternatives).[17] This raises

_____

[17] The Sixth Circuit decided Mitchell before the Supreme Court decided Mathis. As noted above, Mathis says that, before determining whether alternative phrasing in a statute makes the statute divisible, a court must decide whether the alternatively phrased items are elements or means. Mathis, 136 S. Ct. at 2256. It is unclear whether Mitchell's holding that section 39-2-501(a) is divisible survives Mathis. The Court need not answer that question. As discussed below, even if Mitchell survives Mathis and section 39-2-501(a) remains divisible, the Shepard documents for Clemons's attempted-robbery convictions do not reveal whether Clemons's

the question of whether, notwithstanding the indivisibility of section 39-1-501, the divisibility of section 39-2-501(a) permits the Court to review Shepard documents to determine which form of robbery Clemons attempted.

The Court need not resolve this question. Even if the Court could look to Shepard documents here, they do not indicate whether Clemons was convicted of attempted robbery-by-fear or attempted robbery-by-violence. For each of Clemons's attempted-robbery convictions, the only Shepard documents are the indictment and the judgment. (Indictment for Robbery in 87-01941 ("Indictment in 87-01941"); J. in 87-01941; Indictment for Robbery in 87-01220 ("Indictment in 87-01220"); J. in 87-01220.[18]) In each case, Clemons was indicted for robbery. (Indictment in 87-01941 at 1; Indictment in 87-01220 at 1.) Each indictment is a form template. Each states that Clemons "did unlawfully, feloniously, violently and forcibly make an assault on the person of [a victim] and putting him in great danger and bodily fear for his life, and did then and there unlawfully and feloniously and with force and violence aforesaid, steal, take and carry away from the person of [the victim] [certain property]."

attempted-robbery convictions were for attempted robbery-by-violence or attempted robbery-by-fear.

[18] References to "87-01941" are to filings in State v. Clemons, No. 87-01941 (Shelby Cnty. Crim. Ct.). References to "87-01220" are to filings in State v. Moore, No. 87-01220 (Shelby Cnty. Crim. Ct.). Clemons was a codefendant in Moore.

(Indictment in 87-01941 at 2; Indictment in 87-01220 at 2.) Both judgments state only that Clemons pled guilty to "attempt to commit felony, to wit robbery." (J. in 87-01941; J. in 87-01220.) The Shepard documents do not show whether Clemons's attempted-robbery convictions were for attempted robbery-by-fear or attempted robbery-by-violence.

The elements of Clemons's crimes of conviction could be the elements of attempt as applied to robbery-by-violence or the elements of attempt as applied to robbery-by-fear. Clemons's attempted-robbery convictions are violent felonies only if the elements of both forms of attempted robbery are violent felonies.

Considering robbery-by-violence, "violence" under Tennessee's robbery statute means "'physical force unlawfully exercised so as to injure, damage, or abuse.'" Mitchell, 743 F.3d at 1059 (quoting State v. Fitz, 19 S.W.3d 213, 214 (Tenn. 2000)). Under that definition of violence, robbery-by-violence occurs where one feloniously and forcibly takes something of value from another through physical force unlawfully exercised so as to injure, damage, or abuse. See id.; Tenn. Code Ann. § 39-2-501(a). The elements of attempted robbery-by-violence are (1) the intent to commit robbery-by-violence, (2) a direct movement -- beyond preparation or

planning -- toward committing robbery-by-violence, and (3) failure to consummate robbery-by-violence.

Considering robbery-by-fear, "the 'fear constituting an element of robbery is a fear of bodily injury and of present personal peril from violence offered or impending.'" Mitchell, 743 F.3d at 1059 (quoting State v. Taylor, 771 S.W.2d 387, 398 (Tenn. 1989)). "'[I]mpending'" means "'imminent [or] threatening.'" Id. (citing Webster's Revised Unabridged Dictionary 734 (1913)). Robbery-by-fear occurs where one feloniously and forcibly takes something of value from another by causing fear of bodily injury and present personal peril based on threatened physical violence. The elements of attempted robbery-by-fear are (1) the intent to commit robbery-by-fear, (2) a direct movement -- beyond preparation or planning -- toward committing robbery-by-fear, and (3) failure to consummate robbery-by-fear.

To determine whether attempted robbery-by-violence and attempted robbery-by-fear are violent felonies, a court compares the elements of the offenses to the ACCA violent-felony definition at § 924(e)(2)(B). Neither attempted robbery-by-fear nor attempted robbery-by-violence "is burglary, arson, or extortion, [or] involves use of explosives," 18 U.S.C. § 924(e)(2)(B)(ii), so neither is a violent felony under the enumerated-offenses clause. Johnson found

45

the residual clause unconstitutionally vague. For Clemons's attempted-robbery convictions to be violent felonies, attempted robbery-by-fear and attempted robbery-by-violence must both qualify as violent felonies under the use-of-force clause.

Under the use-of-force clause, a prior conviction is a violent felony if the crime of conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 924(e)(2)(B)(i). "Physical force in this context means 'violent force –– that is, force capable of causing physical pain or injury to another person.'" United States v. Gatson, 776 F.3d 405, 410 (6th Cir. 2015) (quoting Johnson 2010, 559 U.S. at 140) (emphasis in Johnson 2010).

Given that definition of physical force, a prior conviction is a violent felony under § 924(e)(2)(B)(i)'s use prong if the elements of the crime of conviction include the use of force capable of causing physical pain or injury to another. Given the above definition of physical force, a prior conviction is a violent felony under § 924(e)(2)(B)(i)'s threatened-use prong if the elements of the crime of conviction include a threat to use force capable of causing physical pain or injury to another.

Section 924(e) does not define "attempt." The Sixth Circuit has defined "attempt" in other criminal-law contexts: "Criminal

attempt requires that the defendant intended to commit the crime and that the defendant took a substantial step towards committing the crime, beyond mere preparation." United States v. Evans, 699 F.3d 858, 867 (6th Cir. 2012) (citing Sixth Circuit Comm. on Pattern Criminal Jury Instructions, Pattern Criminal Jury Instructions § 5.01; United States v. Dolt, 27 F.3d 235, 239 (6th Cir. 1994)). In light of that attempt definition, and the ACCA's definition of physical force, it follows that a prior conviction is a violent felony under § 924(e)(2)(B)(i)'s attempted-use prong if the elements of the crime of conviction are (1) that the defendant intended to use (against another's person) force capable of causing physical pain or injury, and (2) that the defendant took a substantial step -- beyond mere preparation -- toward using (against another's person) force capable of causing physical pain or injury.

Attempted robbery-by-violence is a violent felony under the use-of-force clause. The elements of attempted robbery-by-violence are (1) the intent to commit robbery-by-violence, (2) a direct movement -- beyond preparation or planning -- toward committing robbery by violence, and (3) failure to consummate rob-bery-by-violence. Those elements include both elements necessary for a crime to fall within § 924(e)(2)(B)(i)'s attempted-use prong. Intent to commit robbery-by-violence necessarily requires intent to

use force against another that is capable of causing physical pain or injury. Because Tennessee's overt-act requirement is more stringent than a substantial-step requirement, any overt act toward committing robbery-by-violence is necessarily a substantial step toward using force against another that is capable of causing physical pain or injury.

Attempted robbery-by-fear is also a violent felony under the use-of-force clause. The elements are (1) the intent to commit robbery-by-fear, (2) a direct movement –– beyond preparation or planning –– toward committing robbery-by-fear, and (3) failure to consummate robbery-by-fear. Attempted robbery-by-fear qualifies as a violent felony under § 924(e)(2)(B)(i)'s threatened-use prong.[19]

Under the threatened-use prong, a prior conviction is a violent felony if the elements of the crime of conviction include a threat to use force capable of causing physical pain or injury. The second element of attempted robbery-by-fear is that a defendant must have made a direct movement, beyond preparation or planning, toward

_____

[19] Robbery-by-fear does not qualify as a violent felony under § 924(e)(2)(B)(i)'s use prong or attempted-use prong. As to the use prong, the elements of robbery-by-fear do not include a use of force capable of causing physical pain or injury to another. As to the attempted-use prong, a crime of conviction qualifies as a violent felony if its elements include the requirement that the defendant intended to use force capable of causing physical pain or injury. Robbery-by-fear does not have such an element. Robbery-by-fear requires an intent to frighten someone with the prospect of physical force. That differs from intent to actually use force.

committing robbery-by-fear. That element necessarily requires a threat to use force capable of causing physical pain or injury. Tennessee courts are emphatic that an act necessary for an attempt conviction under section 39-2-501 must be an act that nearly completes the crime. One convicted of attempted robbery-by-fear necessarily took an action coming very close to triggering a completed robbery based on fear of imminent physical bodily injury. Given the stringency of Tennessee's attempt requirement, any conviction for attempted robbery-by-fear inherently involved a threatened use of physical force.

Attempted robbery-by-violence and attempted robbery-by-fear are both violent felonies. Under the attempt statute and the robbery statute that governed at the time of Clemons's attempted-robbery convictions, attempted robbery was categorically a violent felony. Both of Clemons's attempted-robbery convictions are violent felonies.

### b. Aggravated assault

Clemons was convicted of aggravated assault twice in 1988. (PSR ¶ 26.) Under section 39-2-101(b), the 1987 version of Tennessee's aggravated-assault statute,

> A person is guilty of the offense of aggravated assault . . . if such person:
>
> (1) Attempts to cause or causes serious bodily injury to another willfully, knowingly or

recklessly under circumstances mani-
festing extreme indifference to the value
of human life;

(2) Attempts to cause or willfully or know-
ingly causes bodily injury to another with
a deadly weapon;

(3) Assaults another while displaying a deadly
weapon or while the victim knows such
person has a deadly weapon in his pos-
session;

(4) Being the parent or custodian of a child
or the custodian of an adult, willfully or
knowingly fails or refuses to protect such
child or adult from an aggravated assault
described in subdivisions (b)(l), (2), or
(3); or

(5) After having been enjoined or restrained
by an order, diversion or probation
agreement of a court of competent ju-
risdiction from in any way causing or
attempting to cause bodily injury or in any
way committing or attempting to commit a
battery against an individual or indi-
viduals, attempts to cause or causes
bodily injury or commits or attempts to
commit a battery against such individual
or individuals.

Tenn. Code Ann. § 39-2-101(b) (1984 & 1988 Supp.)

Section 39-2-101(b) is alternatively phrased. Under Mathis,
a court determining whether violations of an alternatively phrased
statute are violent felonies must determine whether the subparts are
elements or means. 136 S. Ct. at 2256. A court first looks to the
statute and to Tennessee law. Id.

On its face, section 39-2-101(b) does not resolve whether its subparts are elements or means.[20]  State-court decisions are dispositive, however, and conclude that the subparts are elements. Numerous decisions show that Tennessee courts applying section 39-2-101(b) have charged juries only as to applicable subparts, not the full statute.  See, e.g., State v. Slack, S.C. No. 92, 1991 WL 231111, at *1-2 (Tenn. Nov. 12, 1991); State v. Jarnagin, No. 283, 1989 WL 91076, at *3 (Tenn. Crim. App. Aug. 14, 1989); cf. State v. Burrus, 693 S.W.2d 926, 930 (Tenn. Crim. App. 1985) (deeming it error, although harmless, to read entire statute to jury).

Because the subparts of section 39-2-101(b) are elements, not means, the Court uses the modified categorical approach to determine

---

[20] That section 39-2-101(b) is divided into five distinct parts suggests that the subparts are elements.  Mathis notes three factors bearing on whether a statute's alternatives are elements as opposed to means.  None provides guidance here.  First, if a statute's alternatively phrased items carry different punishments, that suggests the alternatives are elements.  Mathis, 136 S. Ct. at 2256; United States v. Ritchey, 840 F.3d 310, 318 (6th Cir. 2016) (citing Mathis).  Section 39-2-101(b)'s subparts do not have different punishments.  Second, if a statute identifies certain items that must be charged, it suggests that those are elements; if it identifies certain items that need not be charged, it suggests that those are means.  Mathis, 136 S. Ct. at 2256; Ritchey, 840 F.3d at 318 (citing Mathis).  Section 39-2-101(b)'s subparts do not fit either category.  Third, if a statute notes that alternatively listed items are merely "illustrative examples," that suggests the alternatives are means.  Mathis, 136 S. Ct. at 2256; Ritchey, 840 F.3d at 318 (citing Mathis).  Section 39-2-101(b) does not note that its subparts are illustrative examples.  As applied to section 39-2-101(b), the Mathis tests for determining from a statute's text whether the statute's alternative items are elements or means are not applicable.

the elements of Clemons's aggravated-assault convictions.[21]  For

each conviction, the Court may consider <u>Shepard</u> documents to de-

termine the relevant section 39-2-101(b) subpart.  <u>United States v.</u>

<u>Rede-Mendez</u>, 680 F.3d 552, 556 (6th Cir. 2012).

For each of Clemons's aggravated-assault convictions, the only

relevant <u>Shepard</u> document is the indictment.  In Case No. 88-06459,

the indictment alleged that Clemons and others "feloniously and

willfully ma[d]e an assault upon [S.W.] while displaying a deadly

---

[21] As discussed in note 8 <u>supra</u>, in <u>Mitchell</u>, the Sixth Circuit
suggested that, before a court may apply the modified categorical
approach, it is not enough that the relevant statute be divisible.
743 F.3d at 1063–65.  At least one formulation of the relevant
offense must also be a violent felony and at least one formulation
must not.  <u>Id.</u> at 1064–65.  That appears to be dicta.  Even if it
is not, it does not affect the analysis of Clemons's aggravat-
ed-assault convictions, because at least one subsection of section
39-2-101(b) is not a violent felony.  In <u>United States v. Cooper</u>,
the Sixth Circuit analyzed a later Tennessee statute governing
aggravated assault.  739 F.3d 873, 878–79 (6th Cir. 2014) (quoting
Tenn. Code Ann. § 39-13-102).  That statute had a provision under
which "[a] person commits aggravated assault who, being the parent
or custodian of a child or the custodian of an adult, intentionally
or knowingly fails or refuses to protect such child or adult from
an aggravated assault . . . ."  <u>Id.</u> (quoting Tenn. Code Ann.
§ 39-13-102(b).)  <u>Cooper</u> held that, because of this provision, the
statute encompassed crimes of conviction that were not crimes of
violence.  Tennessee's former aggravated-assault statute had a
nearly identical provision –– section 39-2-101(b)(4).  Section
39-2-101(b) encompassed crimes of conviction that were not crimes
of violence –– or, for present purposes, violent felonies.  The
modified categorical approach is permissible here, even under
<u>Mitchell</u>.

weapon." (Indictment for Aggravated Assault in 88-06459.[22]) In Case No. 88-06459, Clemons was convicted under section 39-2-101(b)(3). In Case No. 88-06460, the indictment alleged that Clemons and others "feloniously and willfully cause[d] bodily injury to [W.T.] with a deadly weapon." (Indictment for Aggravated Assault in Case No. 88-06460.[23]) In Case No. 88-06460, Clemons was convicted under section 39-2-101(b)(2). The crimes of conviction to compare to the ACCA violent-felony definition are the forms of aggravated assault defined by sections 39-2-101(b)(3) and 39-2-101(b)(2).

Neither form of aggravated assault "is burglary, arson, or extortion, [or] involves use of explosives," 18 U.S.C. § 924(e)(2)(B)(ii). Neither is a violent felony under the enumerated-offenses clause. Johnson found the residual clause unconstitutionally vague. To be violent felonies, Clemons's aggravated-assault convictions must qualify under the use-of-force clause.

Aggravated assault under section 39-2-101(b)(3) requires that a defendant "assault[] another while displaying a deadly weapon or while the victim knows such person has a deadly weapon in his

_____

[22] References to "88-06459" are to filings in State v. Hill, Case No. 88-06459 (Shelby Cnty. Crim. Ct.). Clemons was a codefendant in Hill.

[23] References to "88-06460" are to filings in State v. Hill, Case No. 88-06460 (Shelby Cnty. Crim. Ct.). Clemons was a codefendant in Hill.

possession." One cannot violate section 39-2-101(b)(3) without using or threatening to use physical force against another. Section 39-2-101(b)(3) aggravated assault is a violent felony under the use-of-force clause.

Conviction for an aggravated assault under section 39-2-101(b)(2) requires that a defendant "[a]ttempt[] to cause or willfully or knowingly cause[] bodily injury to another with a deadly weapon[.]" One cannot violate section 39-2-101(b)(2) without using or attempting to use physical force against another. Section 39-2-101(b)(2) aggravated assault is also a violent felony under the use-of-force clause.

The ACCA provides a defendant is an armed career criminal if he has committed three violent felonies "on occasions different from one another." Id. § 924(e)(1). The indictments in Case No. 88-06459 and Case No. 88-06460 alleged that both assaults occurred on April 15, 1988.[24] That raises the question of whether Clemons committed the assaults on different occasions.

Violent felonies occur on different occasions if: (1) it is possible to discern when the first offense is completed, and the later point when the second offense begins; (2) the offender could have

---

[24] Courts may use Shepard documents to determine whether a defendant's violent felonies were on different occasions. See, e.g., United States v. Amos, 604 F. App'x 418, 423 (6th Cir. 2015).

ceased his criminal conduct after the first offense; or (3) the offenses are committed in different residences or business locations. United States v. Jones, 673 F.3d 497, 503 (6th Cir. 2012) (quoting United States v. Paige, 634 F.3d 871, 873 (6th Cir. 2011)). "Offenses are separate if they meet **any** of these three tests." Id. (citing Paige, 634 F.3d at 873).

In this case, Shepard documents do not satisfy any of the tests. Because both indictments note the involvement of four people in each assault, the events alleged may have occurred at the same time. The government bears the burden of proving that violent felonies occurred on different occasions. See, e.g., Barbour, 750 F.3d at 542-43. That burden has not been met here. Clemons's two aggravated-assault convictions count as one violent felony for ACCA purposes.

Given Clemons's two convictions for attempted robbery and one conviction for aggravated assault, he has three convictions for violent felonies. Clemons qualifies as an armed career criminal even after Johnson. The Court need not analyze whether Clemons's conviction for attempted second-degree murder counts as a violent felony.

## V.    APPEAL ISSUES

Under 28 U.S.C. § 2253, a district court must evaluate the appealability of its decision denying a § 2255 motion. The court

should issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issues satisfying the required showing. Id. §§ 2253(c)(2)–(3).

A "substantial showing" is made when the movant demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)); see also Henley v. Bell, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same standard). A COA does not require a showing that the appeal will succeed. Miller-El, 537 U.S. at 337; Caldwell v. Lewis, 414 F. App'x 809, 814-15 (6th Cir. 2011) (quoting Miller-El, 537 U.S. at 337).

Reasonable jurists could debate whether this Court should have resolved the issue of attempted robbery differently. Therefore, the Court GRANTS a COA as to whether Clemons's 1987 convictions for attempted robbery are violent felonies under the ACCA (the "Attempt Issue"). The Court DENIES a COA as to all other issues.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.  See <u>Kincade v. Sparkman</u>, 117 F.3d 949, 951–52 (6th Cir. 1997).  To appeal <u>in forma pauperis</u> in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  <u>Id.</u> at 952.

Federal Rule of Appellate Procedure 24(a)(3) provides that "[a] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case,[25] may proceed on appeal in forma pauperis without further authorization" unless, <u>inter alia</u>, the district court certifies that an appeal would not be taken in good faith or otherwise denies leave to appeal <u>in forma pauperis</u>.  The Court CERTIFIES, pursuant to Federal Rule of Appellate Procedure 24(a), that an appeal in this matter that addresses the Attempt Issue would be taken in good faith.  The Court CERTIFIES that an appeal that does not address the Attempt Issue would not be taken in good faith.  For such an appeal, Clemons should follow the

---

[25] The Court has previously determined that Clemons is financially unable to obtain an adequate defense in his criminal case.  (<u>See</u> Order Appointing Counsel.)

procedures of Federal Rule of Appellate Procedure 24(a)(5) to obtain <u>in forma pauperis</u> status.

## VI. CONCLUSION

The Government's Motion for Extension of Time to File a Response is GRANTED. The First, Second, Third, and Fourth Motions to Supplement are GRANTED as to their requests that this Court consider certain case law. The Fourth Motion to Supplement is DENIED as moot as to its request that the Court appoint counsel for Clemons to assist with his <u>Johnson</u> challenge. The Traverse Motion is DENIED.

The § 2255 Motion is DENIED. The Court GRANTS a certificate of appealability as to whether Clemons's 1987 convictions for attempted robbery are violent felonies under the ACCA. The Court DENIES a certificate of appealability as to all other issues in the § 2255 Motion.

IT IS SO ORDERED this 15th day of March, 2017.


/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE